ETHEL M. CORCORAN, Plaintiff-Appellant, *v.* JUDGES RETIREMENT SYSTEM OF ILLINOIS *et al.*, Defendants-Appellees.

(No. 55827;

First District—June 8, 1972.

James M. Corcoran, Jr., of Corcoran and Fitzgerald, of Evanston, for appellant.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe, Samuel E. Hirsch, and A. Zola Groves, Assistant Attorneys General, of counsel,) for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Plaintiff appeals from a judgment of the Circuit Court upholding the decision of the Board of Trustees of the Judges Retirement System which denied a widow's annuity increase to the plaintiff. The Board held that the annuity granted plaintiff under the provisions of the Judges Retirement Act, (Ill. Rev. Stat. 1969, ch. 108½, par. 18—128 (2) (b) (2) ), did not include a *pro rata* portion of the 1½% automatic increase in judges retirement annuities as provided for under Ill. Rev. Stat. 1969, ch. 108½, par. 18—125.1.

We affirm.

Plaintiff is the widow of the Honorable James M. Corcoran, a former Associate Judge of the Circuit Court of Cook County who died on

August 19, 1969. At the time of his death, Judge Corcoran was an active participant in the Judges Retirement System of Illinois. (See Ill. Rev. Stat. 1969, ch. 108½, par. 18—101 to 18—165.) As a participant, the judge would regularly contribute a portion of his salary to the system and in return was entitled to a lifetime annuity upon his retirement. In the event of his death prior to retirement his widow, if any, would be entitled to an annuity under the provisions of the statute as follows:

"(2) for the widow of a participant, the widow's annuity shall be the greater of 66⅔% of the annuity her husband would have been entitled to on the date of his death if he were then an annuitant or 7½% of the last salary of the decedent. Ill. Rev. Stat. 1969, ch. 108½, par. 18— 128 (2) b) (2)."

In plaintiff's case, the 66⅔% figure was the applicable one.

The statute governing the retirement system was amended effective August 15, 1969, as follows:

*"A participant who retires from service after June 30, 1969, shall in the month of January of the year next following the year in which the first anniversary of his retirement occurs* have the amount of his then fixed retirement annuity payable monthly increased by 1½%, and such fixed retirement annuity as granted at retirement increased by a further 1½% in January of each year, thereafter, up to a maximum increase of 30% over a period of 20 years. [Emphasis added.]

*The foregoing provision is not applicable to any member who retires before he has made contributions (at the rate of 1% as hereinafter provided in Section 18—133) for this additional annuity for not less than the equivalent of 1 full year.* Such participant shall make arrangements to pay to the system a balance of such contributions based upon his last salary as will bring the 1% contributions, computed without interest, to the equivalent of or completion of 1 year's contributions. [Emphasis added.]

Beginning July 1, 1969, in addition to the rates of contribution prescribed in Section 18—133, each participant shall contribute 1% towards the automatic increase in retirement annuity provided in this Section. This contribution shall be made concurrently with contributions otherwise made for annuity purposes. Each such additional contribution shall be credited in an account entitled 'automatic annuity increase reserve' to be used together with equivalent State contributions to defray the cost of the specified annuity increments. Any balance in such reserve as of the beginning of each fiscal year shall be credited with interest at 4% per annum * * *" Ill. Rev. Stat. 1969, ch. 108½, par. 18—125.1.

Subsequent to her husband's death, plaintiff petitioned the Board of

Trustees of the Retirement System to have included in her widow's annuity computation the 1½% automatic increase. The Board determined that the automatic increase did not apply to the widow's annuity. Plaintiff then filed suit in Circuit Court seeking to have the statute interpreted in her favor. That court upheld the decision of the Board, and this appeal followed.

On appeal the first issue raised by the plaintiff is that the statute, regardless of how it is construed, establishes her right to the annuity. She makes varied arguments in support of this issue. One such argument is that the legislative intention is clearly set out in the statute and favors her position. In the event we deem the statute ambiguous, plaintiff argues that the application of any of a number of rules of statutory construction, which she sets out, would result in allowance of the annuity increase.

■■ Rather than set these arguments out at length, we will only say that after thoroughly considering all of the arguments, we agree with the argument of the State that the automatic increase is not applicable to the plaintiff's annuity.

The plaintiff, under Section 18—128 (2) (b) (2) of the statute, as previously set out, was entitled upon her husband's death to "66⅔% of the annuity her husband would have been entitled to on the date of his death if he were then an annuitant." To become an annuitant under the statute, Judge Corcoran would have had to retire from active service. (Ill. Rev. Stat. 1969, ch. 108½, par. 18—113.) Therefore, we must ask whether if Judge Corcoran had retired from service on August 19, 1969, instead of suffering his untimely death, would he have been entitled to the automatic annuity increase under the statute? If so, then his widow would also be entitled to the increase.

We think the statute clearly states that Judge Corcoran would not have been entitled to the automatic increase of 1½% had he retired from service on August 19, 1969. Looking to the first paragraph of Section 18—125.1 of the statute, we see that it expressly provides that retiring participants shall not be entitled to the automatic increase to their annuity until "the month of January of the year next following the year in which the first anniversary of retirement occurs * * *."

If August 19, 1969, had been the retirement date of Judge Corcoran, then under this provision he would not have been entitled to the addition of an automatic annuity increase on that date. Rather, he would have had to wait until January 1, 1971, to become entitled to such increase. Looking again to the second paragraph of Section 18—125.1 of the statute, we see it provides that the automatic increase is not applicable "to any member who retires before he has made contributions (at

the rate of 1% as hereinafter provided in Section 18—133) for this additional annuity for not less than the equivalent of one full year."

The amended provision regarding the "automatic increase" became retroactively effective on July 1, 1969. Therefore, had Judge Corcoran retired from service on August 19, 1969, he obviously would not have been contributing to the "automatic increase" fund for one full year. There is nothing in the record before us to establish that the contributions he did make to such fund were the equivalent of one year's contribution, and we cannot assume to the contrary. For either or both of the above cited reasons, we think that Judge Corcoran was not entitled to the "automatic increase in retirement annuity" as of August 19, and therefore, under the provisions of Section 18—128 (2) (6) (2) of the statute, his widow, the plaintiff, was not entitled to such increase in her annuity.

The plaintiff advances an additional argument to the effect that since participation in the Judges Retirement System is voluntary, one who elects to participate has made a "contractual" arrangement whereby the rights provided under the statute "vest" in the participant and his beneficiaries. Plaintiff cites Illinois case law in support of this principle. Plaintiff argues that Judge Corcoran's right in the 1½% "automatic increase" vested upon his first contribution to the "automatic increase" fund, and therefore, the action of the trial court impaired this contractual right and denied plaintiff due process of law.

We have no quarrel with plaintiff's argument that the rights granted under the Judges Retirement System statute are contractually vested. Nor do we dispute her cited case law. We do, however, reject her statutory construction. Whether Judge Corcoran accrued any rights or benefits under the statute was dependent on the terms and conditions governing such rights and his compliance therewith. As noted in our discussion of the previous issue, we do not think Judge Corcoran met the required conditions which would entitle him to the "automatic increase" in his annuity as of August 19, 1969, the date of his death. We think the statutory provisions are clear and, therefore, reject plaintiff's assertion that her husband's right to the "automatic increase" vested as soon as he made a contribution. Thus, it is of no consequence as to how we view the nature of the right, *i.e.* contractual or gratuitous, because Judge Corcoran had no such right the day he died.

■■ Finally, the plaintiff argues that the Board of Trustees was without the power to determine that plaintiff was not entitled to the "automatic increase" in her annuity, and its determination that she was not is void. This is so, argues plaintiff, because such power is not specifically given to the Board by the statute. We find no merit in this argument. Chapter

108½, par. 18—138 of the statute describes one of the statutorily enumerated powers of the Board as follows:

"To consider and pass on all applications for annuities and refunds, authorize the granting thereof and suspend any payment or payments, all in accordance with this Article."

We think it would belabor the point except to say that the decision by the Board in the instant matter was an exercise of power clearly within the scope of the above-cited statutory grant.

In accord with the discussion above, we affirm the judgment of the trial court.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.